Our third case for argument today is Z. H. v. Garcia. I still don't hear. Is he not answering? Oh, there he is. All right. I see we have Mr. Cooper. Mr. Cooper, we expect you to be ready when your case is called. Please proceed. Good morning. I need to make sure I turn off the YouTube. I was using that to keep track. This is one time when I just don't have a lot to say other than we should look to Rochin, for example. We should look to the Mr. Cooper. I want to begin with a procedural question. Did the district court authorize your client to proceed anonymously? I don't recall. I can't tell you that without looking. We looked and did not find any authorization. Has this court authorized your client to proceed anonymously? I know the answer to that. No. The answer is no. So what is the basis for filing documents anonymously? It isn't that your client is a minor. Federal Rule of Civil Procedure 5.2A3 says that minors may litigate using initials, but your client's not a minor. Your Honor, obviously there's been a mistake. I apologize. All right. So your client's name will be unsealed immediately after oral argument. If you have filed your client's full name. We actually looked in our files. We have a local rule requiring anybody who litigates anonymously to provide details of their full name. And I can't see any compliance with that rule either. We've just disciplined an attorney for ignoring that rule. Maybe we need to do that here. Well, I certainly hope not because it was not intentional. It is intentional that you have used initials rather than real names. Your Honor, a mistake was made. This isn't a typo in the briefs. It's not a typo. It was a mistake and it won't happen again. I can promise you that. All right. Please proceed. All right. So as I was saying, you know, typically, Your Honor knows me. I've appeared before this tribunal many times or before this court. I have a lot to say. I don't have a lot to say other than what shocks the conscience must be subject to a malleable barometer. I cite to Plessy v. Ferguson. I cite to President Johnson's use of the N word referring to Justice Marshall to show that there was a time when, for instance, the N word just didn't offend many people. And this is a case in which a police officer, and it doesn't matter that he was a police officer, if anyone had done to Z.H. or do you want me to refer to her by her real name, sir? You might as well because it's going to be unsealed. Her name is Zaeli Hess. So Z-A-I-L-E-Y-H-E-S-S. So what happened to Zaeli Hess, even 10 years ago, would not have shocked the conscience. Just like President Johnson referring to Justice Marshall as an N didn't shock the conscience. I don't know, Mr. Cooper, excuse me, but I don't know that you need to concede all that. It seems to me that without getting into the history of race relations and racial terms in this history and in the law, we can focus more specifically here on a good bit of case law concerning sexual assaults by police officers acting under color of law. And I'll tell you, it seems to me that the question here for us is, do we wind up trying to draw fine lines among degrees of egregiousness of sexual assault? We've already opened the door for substantive due process claims in the Woodkey case. And the question is, do we insist on some level of egregiousness or do we just say something closer to the effect that sexual assault, a well-defined, well-understood concept in the law by a police officer acting under color of law with a badge, uniform and so on, shocks the conscience? Well, Your Honor, based on my understanding of what you just said, I would be satisfied with that. But I still think I would think you would be. The question the question, though, is whether, for example, in the Anderson case, we made it more difficult. And whether we have to try to distinguish between sexual assault that is not shocking to the conscience and sexual assault that is. Your Honor, I understand what you're saying. And perhaps there is conduct that would constitute sexual assault. I think more so on the criminal side that we would not say shocks the conscience. But I think in this case, where the district court sort of takes a position that fondling is, in fact, sexual assault, which reaches the level of a constitutional violation. And that's Judge DiGiulio's citation to the Arbiter case at page eight of his opinion. He doesn't make the distinction. I'm making the distinction. So he cites to this case and he cites to this case for support that if you fondle someone, then that's sexual conduct that rises to a constitutional violation. So if Mr. Garcia, a correctional officer, Garcia, had taken his elbow and rubbed it around her breast, then we wouldn't be here. I mean, I just I don't see that logic in 2023. Is there some concrete reason why you're relying on substantive due process rather than the Fourth Amendment? Fourth Amendment says people have a right to be secure in their persons, houses, papers, and effects. Why isn't this a classic Fourth Amendment problem? I don't see why we're talking about substantive due process. Your Honor, she wasn't in custody. And I hear you loud and clear. But unfortunately, there's case law out there that says hands off the Fourth Amendment if she was not in custody. Can I ask a related question, though? And that is, well, for example, in the Sacramento against Lewis case, the Supreme Court was worrying about how far to go with substantive due process into the realms familiarly governed by state tort law. Why is she pursuing state tort remedies? If so, how's that going? And if not, why not? In Indiana, Your Honor, a tort claim notice is needed. And by time she filed, it was just too late. Okay. But I do want to go back to a couple of important points. Your Honor, I understand I shouldn't have to bring to this court race history that this court already knows. But it's the race cases as well as some of the past sex cases that remind us that as we've evolved as a society, it's important that we look at what shocks the conscience in 2023. Mr. Cooper, with regard to that issue, my understanding, and correct me if I'm wrong, is that to determine whether or not your allegations, and this is at the motion dismiss stage, right, that the allegations shock the conscience, we have to look at the totality of the circumstance. We have to look at all of the facts here. And I believe here you alleged also that Ms. Hess was falsely imprisoned while she was in the car and being taken on this ride by Officer Garcia. By that, I just want to make sure I understand, by that you meant that she did not feel free to leave during this ride-along. Is that correct? That is correct. And if I may just get into that for a moment, please. Go ahead. Okay. So she's taken to a secluded area, right, and she finds herself in a secluded area with two men in uniform. One who's a very muscular, strong man that's Officer Garcia. And then he says to the officer, do you want to have sex with me? And he does it over and over. Do you want to have sex with me? And just imagine what that is like for this young lady. It wouldn't matter if she was a 50-year-old lady. She's with two police officers in a secluded area, and one of them is trying to get another police officer to essentially rape her. She doesn't know if she's going to be raped or if the officer is going to say no. In this case, the officer said no. Mr. Cooper, just getting back to the four corners of the complaint, right, because this is at the motion-dismiss stage, and so we're to take the allegation that the complaint is true and provide the plaintiff with all reasonable inferences. So as part of the allegations that she was falsely imprisoned, for example, in that situation, is it your contention that she did not feel free to leave that situation given the circumstances that she was in? That is my contention, and that is her contention. And, Judge Lee, that's what makes this case different. Counsel, that sounds like— That's what makes this case distinguishable. Counsel, can you hear me? I'm sorry, Judge Hamilton. Go ahead. What that sounds like is a steer in the direction of a Fourth Amendment claim, or at least in part. Is that right? Your Honor, I would love to go there. And I tell you, I spent a lot of time trying to fit a Fourth Amendment argument in, a Fourth Amendment theory. And thank goodness for Rave and other cases that allow an attorney not to have the theory right. So if it is a Fourth Amendment case, I'm certainly all for it. But I think this case has to be seen as shocking to conscience in large part because of that secluded area. I must say, Counsel, being all for it, maybe you should just stop there. Substantive due process is not in the real Constitution. And all the recent substantive due process cases from the Supreme Court have been losses. I remind you of Dobbs. But the Fourth Amendment is really in the Constitution. The Equal Protection Clause is really in the Constitution. And usually people do best by harping on those things that are actually there. I don't know why you want to retreat to something that's not there. Judge, I understand. I hear what you've said. I just want to harp on the point that what happened to my client should shock the conscience. It's not necessary, it should not be necessary that he uses his elbow in a twirling motion to implicate the Constitution. So if I touch your breast based on this district court opinion, if I rub your breast based on this district court opinion, I haven't offended the Constitution. If I touch your leg close to the vaginal area and I do it over and over, I haven't offended the Constitution. That's what the opinion is saying. That's why we keep asking things like, aren't you just pleading? Aren't you now articulating a perfectly basic Fourth Amendment claim? People have a right to be secure in their persons against unreasonable, et cetera. And you're alleging that your client was not made insecure in her person by somebody acting under color of state law. It's not a hard claim to make out. You just have to pick the right amendment. Yes, Your Honor. And if you are, I'd like to add, you know, I recall when the Berry v. CTA decision was published, and I'm sure Your Honor recalls, and I thought it was a new day. And I'm not sure what happened in this case. One time is enough. So when the district court makes it a point or laments that, you know, it only happened once, we're running into trouble. Mr. Cooper, I know your time is running low. I was wondering if I could ask you a question about the order. The district court's order dismisses the case with prejudice. I didn't really see any sort of analysis in the district court's order as to why the dismissal was with prejudice. Did the district court give any indication to you at that time or any other time why the dismissal was with prejudice as opposed to without? No, Judge, and I noticed the same thing that you noticed. And that's one of the things I talk about in the brief, although briefly. Thank you. Okay. Thank you. You've got about 36 seconds left. So in my 36 seconds, I think Berry points out that we don't need to conduct a. It's okay if you want to use them up. I thought you were. Okay, go ahead. Do I have 36 seconds or five minutes, Judge? You now have about 20 seconds left. All right. I'll wait until my rebuttal. That's okay. Thank you. Your rebuttal will be 20 seconds. Ms. Levinson. Good morning, Your Honors. If it may please the Court, Shawna Levinson here on behalf of the appellee, Jamie Garcia. Mr. Cooper doesn't, of course, point to any precedent that would sustain a 14-year. Okay. You've heard our questions. Why isn't this a standard Fourth Amendment claim? Well, Your Honor, it was withdrawn from Mr. Cooper in the district court. The district court in footnote 1 of its opinion and order said that it was withdrawn. There was no 60B motion that was filed. I don't understand. You don't have to plead law in a complaint. You don't advance legal claims in a complaint. You don't withdraw legal claims. I don't understand what's going on. I'm not certain other than the fact that that wasn't raised in the appellant's brief when it came to filing. Now, there may be a question of forfeiture here. I can see that. But I wish you'd address my question. Why isn't this, if you're looking for constitutional footing, why isn't this a standard Fourth Amendment claim? I believe that the weaknesses in the Fourth Amendment claim would be the fact that she never asked to leave, first of all. And there's no indication that he ever said or did anything that made her believe that she was unable to leave. In fact, one of the incidents that was described, one of the very few incidents. Driving off into the woods and implicitly threatening rape does not lead somebody to believe she can't leave? Well, I would disagree. If you look at the actual allegations. Look, if you look at our jurisprudence under Terry stops, trying to figure out whether somebody has been stopped, we don't say unless you demand to leave, you haven't been, you aren't covered by the Fourth Amendment. Right. Why would there be a demand to leave requirement here? I think, number one, I think that it's overstated the fact that she was taken to a, I don't believe that that's what the complaint alleges. We are early in the case. Right. We have to take the plaintiff's allegations in the light most favorable to the plaintiff. You may be able to show that this is all hogwash or overstated or something like that. But we have to play the game. We also have to look at the four corners of the complaint and the reasonable inference, as I believe as Judge Lee pointed out, of what came of that. And, I mean, the allegation in the complaint was that she was, they were waiting in line at a gas station together with other people around. Correct? And so clearly there wasn't a confinement there. She was never in handcuffs. She was never asked to leave. She was never told to leave or never, you know, she couldn't leave. The reason I mentioned Terry is that it's very well established in Terry that you don't need to put somebody in handcuffs for them to invoke the Fourth Amendment. You don't need to demand to leave in order to invoke the Fourth Amendment. Why would those things be true here? Well, I think that as evidenced by the fact that the appellant never raised the argument, he conceded it at the trial level, that the Fourth Amendment didn't apply. He didn't raise it in the briefings before this court, and he had an opportunity. Certainly, he had every opportunity to amend his complaint. We're in a difficult area, frankly. We have Fourth Amendment theories available. We have equal protection theories available. We also have considerable substantive due process precedents from this court and from, at least by my count, the Ninth, Third, Fifth, and Eighth Circuits treating police officers' sexual assaults as constitutional violations. So a district judge or a lawyer or a circuit judge could easily be forgiven, at least by my lights, for not getting the exact right theory for the particular case. But let me ask you the question I was asking Mr. Cooper earlier. And that is, given the Wootke case, given the Hawkins and Haberthorne and Tyson and Kane cases from the other circuits, why isn't this a well-recognized substantive due process claim? Your Honor, the United States Supreme Court has clearly ruled in Roshan and with the county of Sacramento what constitutes a Fourteenth Amendment claim. And it rises to the level of abhorrent behavior, of shocks the conscience standard. And in each of the cases that I was just referring to, circuits said allegations of a police officer's sexual assault on the job, badge, uniform, gun, shock our conscience. Yes, and absolutely. And that's been withheld, I think, or upheld in the circuits and with district courts. However, this complaint does not allege those sexual allegations. Perhaps boorish conduct? I mean, again, to go back to the allegations. You want us to draw the line between just how long the fondling goes on, how severe it is? What's the line that you want us to draw? There is no case that draws the line anywhere close to where this is. I think that Fontana and Harberger are both... Where would you draw the line? Well, what happened here, the allegation is that when he adjusted her seatbelt, he brushed against her breast. He rubbed his arm against her breast. He placed his hand on her butt at a gas station, and he placed his hand on her leg at various times while they drove around. There is no other sexual contact.  Well, the incident in the woods, there's absolutely... Every case that's been decided in this circuit, other circuits, and in the district courts have only approved the 14th Amendment on the standard of sexual assault and coercion. And so there is no coercive behavior. There might have been some boorish remarks at that. And the specific context of the complaint was that he drove up to another police officer. They both had their windows down. He said, would you like to have sex with her? He said it a couple of times. There's no allegation that he did anything to coerce that. The next allegation is that he drove away and drove around longer for the rest of the ride-along. He then delivered her back to her car. So there's just no allegation of egregious behavior. Well, there was an allegation about the prostitute, right? Right, that he told the prostitute that she, too, wanted to be a prostitute. But again, there's no coerced behavior. There's no egregious behavior that shocks the conscience. I mean, what we're talking about is inappropriate behavior from a police officer if those allegations were to be true, which we, of course, have to assume for purposes of today's argument. But they are not conscience-shocking. If that incident in the secluded area were to have resulted in any kind of— I mean, she didn't even have to say no, which is another criteria of the other circuits, where the person repeatedly said no. And, in fact, I believe it was when they say no, if the officer says, okay, never mind, that does not rise to the level of a constitutional claim. That's one of the district court decisions. So here there's just no—there's nothing in the complaint that suggests that he elicited improper behavior. We have those three touchings, none of which are under—in Harberger, it was repeated harassment of this woman under the threat of legal action. He went under her sweatshirt, fondled her breasts. He was up and down her sides. There was nothing to—that was far more—I mean, here we have a fully clothed woman who never expressed her discomfort to him. I'm not saying, you know, that any of this is great behavior, but it does not rise to the level of a constitutional claim, where the federal courts want to hear every time that incidents such as these— I mean, this would be such a huge diversion from all of the case law. There are certainly cases that could move the dial if the court were so inclined. It would not be something as, frankly, innocuous compared to the other districts and our district court decisions. So you do want us to start drawing those lines. One of the things that comes up in other circuits' discussions of similar sorts of claims, and it comes up, for example, in County of Sacramento against Lewis, is both time for reflection, for example, the police chase in Lewis, and legitimate governmental interests. Would you agree with me that for the conduct alleged here, there is no legitimate governmental interest at stake? Well, I guess for a moment with the County of Sacramento, of course, that ruling said that it had to rise to the level of the person not caring whether they lived or died. It had to be tantamount to that egregious of a behavior in order to effectuate the 14th Amendment. And would you answer my question, please? About the legitimate state interest at stake here? Well, I believe that the state interest is an interesting concept because, in fact, state court law— What interest was Mr. Garcia, Officer Garcia, serving in the alleged conduct? Well— Would you agree with me there was none? There was none. Yeah, I mean, I suppose that arguably his interest was he was making for an exciting ride-along for a person who— Okay, if that's the best answer, we should move on. Okay. All right. I've got a question. Do you concede that the plaintiff alleges an infringement of a fundamental right? I believe that the state law, state tort law— I'm not asking about state tort law. I do not believe that her constitutional right to be free of bodily and technical infringements— No, I'm not asking about constitutional rights in general. Just listen. Do you concede that she's alleging the violation of a fundamental right? The Supreme Court has been clear in recent years that there's no substantive due process claim without a fundamental right. In Sacramento against Lewis, that was the right to be alive because the decedent, well, was the decedent. I was looking in your brief for an argument about whether there is a fundamental right involved here, and I didn't see it. So do I take it that you're conceding that? I would concede in Roshan that there was a fundamental right not to be purged. I do not concede— I'm not asking you to relitigate a case the Supreme Court decided in the 1940s. I'm asking what position you are taking here and now. Yeah, there was no constitutional right triggered or— I'm not asking in general about constitutional rights. You're not addressing my question. Well, isn't the issue of whether this case should be pending in the federal courts under a constitutional claim— No, I think we're done here. You obviously have not read the Supreme Court's recent substantive due process case. We are done, counsel. Okay, thank you. I would ask that the judgment be affirmed, of course. Mr. McCrum. Good morning, Your Honors. I please the Court. I'm here on behalf of Chief Doty, who was the chief at the time of the occurrence, and addressing some of the questions put by Judge Hamilton, also by Judge Easterbrook. Whether this is viewed as a Fourth Amendment claim or whether it's viewed as a Fourteenth Amendment claim, there first must be a predicate violation under either of those before we even reach the question of whether there are any predicate facts that would give rise to personal liability on the part of Chief Doty, and there are a paucity of facts contained within the four corners of the complaint to give rise to any such plausible conclusion. There simply are no plausibly pleaded facts to show that he personally participated in or even knew of the constitutional harm when it occurred. There is the allegation that is made very broadly that he knew of and permitted of the ride-alongs, and that was very artfully the use of the word ride-alongs because it suggests plural. There's a reference to two ride-alongs when, in fact, there was a second ride-along that didn't occur until after the ride-along question occurred, which doesn't impose notice of anything to anyone. And so we're simply talking about what was alleged to sufficiently state a claim that would show personal participation, which the circuit has held time and time again is required of a supervisory official in order to impose any kind of liability. I would also point out, if I may briefly, just to follow up with a question put to my colleague, that the Fourth Amendment claim, and Judge Easterbrook touched upon this, is subject to forfeiture and waiver because in the response brief submitted to the motion to dismiss, the plaintiff said that she was comfortable pursuing only on a Fourteenth Amendment claim. There was no discussion that was made, and I understand that the Fourth Amendment is applied to the states through the Fourteenth Amendment. Acknowledged. But in any case, there must be some body of information available to a supervisory official, not only to just know about and say to permit a ride-along, which may in turn turn into an incident that might not pass constitutional muster, but the supervisory official must know of that constitutional harm. And I would just cite to the court briefly a couple of cases, Gill v. City of Milwaukee, and Lanigan v. Village of East Hazelcrest, Illinois, because in those cases there is a distinction made between what was known by the supervisory official, by the chief, relative to the actions that were being taken. For example, in Gill, it involved, I believe, an intellectually challenged individual who was taken into custody by police and then was subjected to aggressive and arguably unconstitutional interrogations. What was known to the chief was only that there was an investigation ongoing, and so the court made the distinction that knowledge of simply an occurrence that may give rise to a potential constitutional harm. There is no and there must be more than just a single incident alleged that would give rise to in part this kind of knowledge. That does not exist here. There is a reference to a claim about a lawsuit that had been brought by a co-employee of Officer Garcia, but that case was in our estimation meritless when it was filed, meritless when it was pending during which this ride-along occurred, and adjudicated in favor of the City of Hammond on a claim that was predicated on employment discrimination. I take it all that is far outside our record. That is also the case. None of that was included in some of the briefing. However, with respect to what was before Judge DiGiulio, there was none of that. There were no facts that would plausibly give rise to any instance or inference, I should say, about any kind of predicate knowledge that would foreshadow that this conduct was bound to happen. For these reasons, we believe that the court was right in rendering its decision. If there are any questions, I'll be happy to field those. Otherwise, we would ask that the judgment be affirmed on behalf of Defendant Doty. Thank you, Mr. McCrum. Mr. Cooper, you have 20 seconds. Mr. Cooper, you're on mute. Mr. Cooper, you are on mute. Okay, I'm back. I'm sorry about that. Your Honor, there was knowledge by Chief Doty, I should say, to all of the judges on the panel. I make that clear in the brief. It's the Zaney case, S-Z-A-N-E-Y. Chief Doty was aware not just of the ride-along having occurred, but also that at the time, Mr. Garcia, Officer Garcia, was in the midst of a case where a fellow police officer was suing him for sexual misconduct. Thank you very much. The case is taken under advisement. And the court will take a brief recess before calling the next case. Thank you.